**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**JONESBORO DIVISION**

**PRENTIS RUPERT**
**and DERRICK BOGAN**                                                    **PLAINTIFFS**

**V.**                    **CASE NO. 3:14-CV-161 JM/BD**

**LARRY MILLS**
**and BECKY HITT**                                                       **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.      Procedures for Filing Objections:**

This Recommended Disposition ("Recommendation") has been sent to United

States District Court Judge James M. Moody, Jr.  Any party may file written objections to

this Recommendation.  Objections must be specific and must include the factual or legal

basis for the objection.  An objection to a factual finding must identify the finding of fact

believed to be wrong and describe the evidence that supports that belief.

Your objections must be received in the office of the United States District Court

Clerk within fourteen (14) days of this Recommendation.  A copy must be served to the

opposing parties.  If no objections are filed, Judge Moody can adopt this

Recommendation without independently reviewing the record.  By not objecting, you may

also waive any right to appeal questions of fact.

**II.     Discussion:**

A.      Background

Plaintiffs Prentis Rupert and Derrick Bogan filed this lawsuit pro se alleging that

their constitutional rights were violated while they were housed at the Poinsett County

Detention Center ("Detention Center").[1]  (Docket entry #2)  Although a number of

Plaintiffs' claims have been dismissed, the following claims remain: (1) Plaintiff Rupert's

claim that he was exposed to tuberculosis while housed at the Detention Center;

(2) Plaintiff Rupert's claim that Defendant Hitt unlawfully discriminated against him

based on his race; and (3) Plaintiffs' claim that their conditions of confinement at the

Detention Center were hazardous and constituted cruel and unusual punishment.

Defendants have now moved for summary judgment on Plaintiffs' remaining

claims.  (#82)  Plaintiffs have responded to the motion.  (#86, #88)  Based on the

evidence presented, the Court recommends that the Defendants' motion (#82) be

GRANTED.  Plaintiffs' remaining claims should be DISMISSED, with prejudice.

Plaintiff Rupert's motion for order (#75) should be DENIED, as moot.

B.     Standard

Summary judgment is appropriate when the evidence, viewed in the light most

favorable to the nonmoving party, presents no genuine dispute as to any material fact.

FED.R.CIV.P. 56; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548 (1986);

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505 (1986).  Here, the

nonmoving parties are Plaintiffs Rupert and Bogan.

---

[1] Mr. Rupert has now been transferred to the Arkansas Department of Correction, but Mr. Bogan remains incarcerated at the Detention Center.  (#90)

As moving parties, the Defendants bear the initial burden of demonstrating that there is no genuine dispute of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553 (1986). If the Defendants meet this burden, the Plaintiffs must respond by coming forward with specific facts establishing a genuine dispute for trial. *Torgerson v. City of Rochester,* 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If they do not come forward with enough evidence to establish a necessary element of a claim, the Defendants are entitled to judgment as a matter of law on that claim. *Celotex Corp.,* 447 U.S. at 322–23, 106 S.Ct. at 2552.

B.      Exposure to Tuberculosis

In the first amended complaint, Plaintiff Rupert claims that, during his incarceration at the Detention Center, he was exposed to two inmates who tested positive for tuberculosis. (#10 at p.5) He alleges that Defendants failed to adequately screen inmates for tuberculosis at the Detention Center, then failed to isolate those inmates who tested positive for tuberculosis.

In support of their motion for summary judgment, Defendants attached the affidavit of Susan Cox, a nurse at the Detention Center. (#83-1) Ms. Cox testified that at least once per month, and sometimes more frequently, skin tests are performed on inmates who have been sentenced to more than fourteen days, or who are likely to be held for more than fourteen days, in the Detention Center. (#83-1 at p.1) Any inmate who tests positive for tuberculosis is taken to the Department of Health to determine whether the

inmate has active tuberculosis.  (*Id.*)  According to Ms. Cox, a positive skin test does not mean that an individual has active tuberculosis; rather, a positive test indicates that the person has come into contact with another person with tuberculosis at some point.  (*Id.*)

Ms. Cox further testified that in the ten years that she has been the nurse at the Detention Center, she does not recall there ever having been an active case of tuberculosis at the Detention Center.  (*Id*. at p.2)  Furthermore, Ms. Cox explained that if an inmate did test positive for active tuberculosis, he would be placed in isolation.  (*Id.*)

Mr. Rupert attached the declaration of Hunter Rosamond, another inmate at the Detention Center, to his response to the Defendants' motion,.  Mr. Rosamond stated that "Silas Hardin is [an] active case of T.B."  (#88 at p.10)  Other than Mr. Rosamond's conclusory allegations, however, Mr. Rupert has not provided any evidence to support this statement.  Moreover, neither Plaintiff has produced any evidence that they were actually exposed to any inmate who tested positive for active tuberculosis while housed at the Detention Center.  As a result, Plaintiffs have failed to identify any genuine dispute of fact on this issue, and Defendants are entitled to judgment as a matter of law.

C.      Equal Protection Claim - Plaintiff Rupert

In his first amended complaint, Mr. Rupert claims that Defendant Hitt discriminated against him based on his race.  He alleges that after he was involved in an altercation with another inmate, he was placed on lockdown for more than ten days, but

that two white inmates who were involved in another similar incident were placed on lockdown status for only five days.  (#10 at p.3)

"Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact." *Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987).  "The heart of an equal protection claim is that similarly situated inmates were treated differently and that this difference in treatment bore no rational relationship to any legitimate penal interest." *Weiler v. Purkett*, 137 F.3d 1047, 1051 (8th Cir. 1998) (citing *Timm v. Gunter*, 917 F.2d 1093, 1103 (8th Cir .1990)).

Simply stated, an equal protection analysis begins with this question: Has the inmate pleaded facts showing that he was treated differently from other inmates who were similarly situated? *Rouse v. Benson*, 193 F.3d 936, 942 (8th Cir. 1999).  Here, Mr. Rupert has failed to provide any evidence to support this claim.

Defendants filed the jail incident report for the altercation involving Plaintiff Rupert and inmate Wilson.  (#83-6)  According to the incident report, Mr. Rupert cornered inmate Wilson for ten minutes, then punched him.  (#83-6 at p.2)  Based on the written description of the video recording of the incident, inmate Wilson was trying to get away from Mr. Rupert.  (*Id*.)  As a result, Defendant Hitt placed Mr. Rupert on lockdown for ten days.  (*Id*.)

In his response to the Defendants' motion, Mr. Rupert also attached inmate Wilson's affidavit.  Mr. Wilson testified that, following the altercation with Mr. Rupert, Defendant Hitt inquired as to whether he would like to "press charges" against Mr. Rupert.  (#88 at p.15)  When Mr. Wilson explained that he was not interested in pursuing criminal charges, Defendant Hitt allegedly asked Mr. Wilson why he would allow Mr. Rupert to "get away with this," and used a racially derogatory term.

Mr. Rupert's equal protection claim fails for three reasons.  First, the use of racial slurs, while unprofessional, does not rise to a constitutional level.  *Doe v. Gooden*, 214 F.3d 952, 955 (8th Cir. 2000) (yelling, screaming, name-calling, and other verbal abuse does not demonstrate a constitutional violation).  Second, Mr. Rupert has not come forward with any evidence of Defendant Hitt's "discriminatory racial purpose" in sentencing him to lockdown for ten days.  Third, Mr. Rupert has not presented any evidence that would lead the Court to conclude that Mr. Rupert was "similarly situated" to the other, white inmates referenced in his complaint.  Accordingly, Defendants are entitled to judgment as a matter of law on this claim.

D.      Hazardous Conditions of Confinement

In a supplement to the amended complaint, Plaintiff Rupert claims that: the Detention Center's ventilation system is inadequate; the Detention Center's sprinkler system is non-functioning; there are no functioning fire alarms or fire extinguishers available at the Detention Center; the Detention Center's light fixtures are unsafe; the

6

Detention Center's showers are covered in black mold; the mattresses are unsanitary; Plaintiffs have been denied adequate yard call; and Plaintiffs are not provided an opportunity to use the restroom while they are housed in the day room.   (#57)

As pretrial detainees, Plaintiffs' claims are analyzed under the  Fourteenth Amendment's Due Process Clause rather than under the Eighth Amendment.  *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861 (1979).  Defendants violated Plaintiffs' due process rights if the Detention Center's conditions of confinement constituted punishment.  Under the Fourteenth Amendment, pretrial detainees are entitled to protection "at least as great" as that afforded convicted prisoners under the Eighth Amendment. *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S.Ct. 2979 (1983). Punishment that "deprive[s] inmates of the minimal civilized measures of life's necessities" is unconstitutional.  *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392 (1981).

Defendants attached Defendant Larry Mills's affidavit to their motion for summary judgment. (#83-4)  Defendant Mills addressed many of Plaintiffs' concerns in his affidavit.  According to Defendant Mills: there are seventy-seven filters located within the Detention Center's ventilation system, and these filters are changed on a regular schedule; there are seven fire extinguishers located in the Detention Center; the Detention Center has a written fire plan, and the local fire department inspects the Detention Center on a yearly basis to ensure that the fire extinguishers are working properly; and Detention

7

Center mattresses are disinfected when one inmate is released from the Detention Center and again prior to assigning the mattress to another inmate.

Plaintiffs also claim that all inmates are placed on lockdown status[2] and are not provided adequate yard-call.  Defendant Mills explains that Detention Center inmates are not placed on lockdown for disciplinary purposes.  (*Id*. at p.2)  Rather, he testified, due to the number of inmates in relation to the number of guards, all inmates are housed in their cells for twenty-three hours each day for safety reasons.  (*Id*.)  Furthermore, according to Defendant Mills, inmates are provided yard card when "weather, staffing, and scheduling permits, including other factors, including, but not limited to security, court, etc."  (*Id*.)

At the time this lawsuit was filed, both Plaintiffs were pretrial detainees. Accordingly, they could not be punished for a disciplinary infraction without notice and an opportunity to be heard.  *Bell v. Wolfish*, *supra*; *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992) ("[p]retrial detainees are presumed innocent and may not be punished"); *Higgs v. Carver*, 286 F.3d 437, 438 (7th Cir. 2002) (pretrial detainee cannot be placed in segregation as a punishment for a disciplinary infraction without notice and an opportunity to be heard; due process requires no less).  However,  where "a particular condition or restriction of pretrial detention is reasonably related to a legitimate

---

[2] Defendant Mills explains that the Detention Center is a " 23/1 facility."  (#83-4 at p.2)

governmental objective, it does not, without more, amount to 'punishment.'" *Bell*, 441

U.S. at 539 & n. 21.

Here, the placement of Plaintiffs on lockdown status, as well as their availability to

participate in yard call, appears reasonably related to a legitimate government objective.

Furthermore, Plaintiffs' vague allegations that they were denied outdoor recreation are

insufficient to create a genuine issue of material fact on this issue. *Rahman X. v. Morgan*,

300 F.3d 970, 974 (8th Cir. 2002) (holding that the denial of yard call for three months

was not a constitutional violation).

Finally, Plaintiffs claim that they are not provided an opportunity to use the rest

room during the hour that they are housed in the day room; the light fixtures are unsafe;

and there is black mold in the showers.  These allegations are insufficient to establish a

constitutional violation.  The Court must review the "totality" of the Plaintiffs'

confinement, including the "length of [] exposure to unsanitary conditions and how

unsanitary the conditions were," in determining whether Plaintiffs' incarceration

constituted punishment. *Owens v. Scott County Jail*, 328 F.3d 1026 (8th Cir. 2003).

Here, the Court cannot conclude that the general allegations regarding the lack of

availability of restrooms in the dayroom, the alleged unsafe light fixtures, and the

presence of black mold in the showers constituted punishment.  According to the

Detention Center Compliance Report dated April 23, 2014, the Detention Center lighting

was adequate and the activity rooms met requirements.  (#83-5 at p.7)  Furthermore, the

Detention Center was described as "very clean and well maintained."  (#83-5 at p.8)

Because Plaintiffs' conclusory allegations cannot defeat the undisputed evidence

presented in support of a motion for summary judgment, Defendants are entitled to

judgment as a matter of law on claims that the conditions at the Detention Center were

hazardous.

E.     Official Capacity Claims

Defendants Mills and Hitt are employees of Poinsett County, Arkansas.  Plaintiffs

claims against the Defendants in their official capacities are, in effect, claims against

Poinsett County.  *Parrish v. Ball*, 594 F.3d 993, 997 (8th Cir. 2010).  Local governments

are not liable under § 1983 for injuries inflicted solely by their employees or agents.

*Monell v. New York Dep't. of Soc. Servs.*, 436 U.S. 658, 694, 98 S.Ct. 2018 (1978).

Rather, a county is liable for the acts of its employee only when the employee is carrying

out a county policy or custom.  *Id.*; *Jenkins v. County of Hennepin, Minn.*, 557 F.3d 628,

632 (8th Cir. 2009).

For purposes of § 1983, a policy is a "deliberate choice of a guiding principle or

procedure made by the municipal official who has final authority regarding such matters."

*Marksmeier v. Davie*, 622 F.3d 896, 902 (8th Cir. 2010).  To establish a custom, a

plaintiff must prove that the county engaged in a continuing pattern of unconstitutional

misconduct, not just a single unconstitutional act.  *Id.* at 902–903.

10

Here, based on the undisputed evidence presented, there is insufficient evidence, as a matter of law, that Poinsett County engaged in a continuing pattern of unconstitutional misconduct.  As a result, Plaintiffs' claims against the Defendants in their official capacities must fail as a matter of law.

**III.   Conclusion:**

The Court recommends that the Defendants' motion for summary judgment (#82) be GRANTED.  Plaintiffs' remaining claims should be DISMISSED, with prejudice. Plaintiff Rupert's motion for order (#75) should be DENIED, as moot.

DATED this 1st day of April, 2015.

_____
UNITED STATES MAGISTRATE JUDGE